In the Matter of the Estate of JOHN KASSAM, Deceased.

Surrogate's Court, Bronx County, September 15, 1931.

*Harry L. Kreeger* [*William Roth* of counsel], for the petitioner.

*Schulz & Williamson* [*Robert Williamson* of counsel], for the public administrator.

HENDERSON, S. Upon this application for letters of administration the public administrator of the county of Bronx appears and demands their issuance to him.

The decedent died on March 7, 1931, intestate, a citizen of the United States and a resident of Bronx county. He left no widow. His nearest relative and sole next of kin and distributee is a sister, a citizen of the Republic of Estonia and residing therein at Parnu. At the time of decedent's death she was the only person entitled to take or share in the personal property of the decedent, and was, therefore, the only person who had a right to letters of administration upon his estate prior to that of the public administrator under the provisions of section 118 of the Surrogate's Court Act.

As she was a non-resident alien, she was not competent to serve as administratrix and letters of administration could not have been issued to her. (Surr. Ct. Act, § 94.) As the decedent left no other next of kin, the public administrator of the county of Bronx had, at decedent's death, a right to administration superior to all other persons and such letters must have been granted to him (Surr. Ct. Act, § 118; *Matter of Findlay*, 253 N. Y. 1, 13; *Matter of Brancati*, 137 Misc. 50; affd., 232 App. Div. 740; *Matter of MacMillan*, 133 Misc. 570), unless an order were made upon his formal motion, excusing him from acting as such administrator. (Surr. Ct. Act, § 120; *Matter of Morel*, 103 Misc. 555.)

The petitioner, a resident of this State, is the daughter of decedent's sister and, therefore, a niece of the decedent, but she is not one of his " next of kin " as defined either in former subdivision 12 of section 314 of the Surrogate's Court Act (*Matter of Kroog*, 84 Misc. 676), or in present section 81 of the Decedent Estate Law (added by Laws of 1929, chap. 229, as amd. by Laws of 1930, chap. 174), for the reason that her mother, decedent's sister, survived the decedent.

The petitioner in her petition, verified June 22, 1931, and filed herein on June 26, 1931, alleges that on May 27, 1931, her mother duly assigned and transferred to her all her mother's right and interest in and to this estate and duly conferred upon her all right and power to effectuate such transfer as well as the administration of the estate. The instrument assigning such interest and conferring such power was duly recorded in this office on June 24, 1931.

The petitioner prays that letters be issued to her on the ground that before any petition for administration was presented, she became, by such assignment, the only person entitled to take or share in this estate, and that she is a niece and a close relative of the decedent.

It may be conceded, for the purpose of this application, that

the recorded instrument constituted a valid and absolute assignment of the entire estate, a valid and full power of attorney and a consent that the petitioner or the petitioner's nominee be appointed administrator. The petitioner, as assignee of a distributee, is, therefore, a person interested in this estate (Surr. Ct. Act, § 314, subd. 11) and may petition for the appointment of an administrator. (Surr. Ct. Act, § 119; *Matter of Jordan*, 202 App. Div. 710.)

It has long been held that a non-resident alien, who is herself incompetent to serve as administratrix and, therefore, is not entitled to letters, cannot delegate a right which she does not herself have, and that her nominee, or a person designated by such nominee, cannot be appointed administrator by virtue alone of such nomination, delegation, designation or consent, for the right to administration is personal and without power of substitution except under circumstances expressly prescribed by statute. (Surr. Ct. Act, §§ 94 and 118; *Matter of Findlay, supra; Matter of Brancati, supra; Matter of MacMillan, supra; Matter of Ferrigan*, 92 App. Div. 376; *Matter of Flynn*, Id. 379; *Matter of Root*, 1 Redf. 257; *Sutton* v. *Public Administrator*, 4 Dem. 33, 36; *Matter of Mora*, 133 Misc. 254; *Matter of Kroog, supra.*)

The petitioner, therefore, cannot be appointed administratrix under such power of attorney or assignment, as the choice of the sole next of kin or distributee.

Neither can she be granted administration as the assignee of the sole distributee, for she is not " any other next of kin entitled to share in the distribution of the estate " to whom letters may be issued under the provisions of section 118 of the Surrogate's Court Act. The expression " next of kin " was defined in subdivision 12 of section 314 of the Surrogate's Court Act, prior to the general amendment of laws and acts relating to decedents' estates and their administration, in 1929, effective September 1, 1930, as follows: " The term, ' next of kin,' includes all those entitled, under the provisions of law relating to the distribution of personal property, to share in the unbequeathed residue of the assets of a decedent after payment of debts and expenses, other than a surviving husband or wife." The laws relating to such distribution were contained in the former sections 97, 98, 99, 100 and 103 of article 3 of the Decedent Estate Law, formerly known as the Statute of Distribution. Subsequent to the effective date of such general amendment, the statutory definition of that term was and now is contained in the new section 81, article 3, of the Decedent Estate Law, which reads: " Whenever in any statute the words heirs, heirs at law, next of kin, or distributees, are used, such words shall be construed to mean and include the persons entitled

to take as provided by this article." The petitioner is not " entitled to share " in the unbequeathed assets of the decedent under the Statute of Distribution (Dec. Est. Law, former § 98, subds. 5, 10, 11 and 12), for the reason that her mother, decedent's sister, survived the decedent, nor is she " entitled to take as provided by " article 3 of the former Decedent Estate Law (Dec. Est. Law, § 81) for the same reason.

Section 118 of the Surrogate's Court Act provides that the legal representative of a deceased sole distributee, the committee of an incompetent sole distributee or the guardian of an infant sole distributee, shall have prior right to letters in place of such deceased, incompetent or infant sole distributee. It also permits the appointment of the committee of any incompetent distributee and the guardian of any infant distributee in the place of such incompetent or infant, and the designee of all the distributees if the latter are all competent to receive letters, but it is silent as to an assignee of a next of kin or distributee. It has been held in an application for letters of administration with the will annexed that, in the absence of statutory authority, the assignment by a sole residuary legatee of all her rights and interest under the will, does not give her assignee any right to administration c. t. a. under section 133 of the Surrogate's Court Act; that " an assignee is not a legatee, although an assignee is a person interested," and that the statute nowhere gives an assignee any right to letters of administration c. t. a. (*Matter of Jordan, supra.*)

Applying the reasoning of that decision, the assignment by a sole next of kin does not give the assignee thereunder any right to administration under the statute regulating the grant of administration in cases of intestacy. An assignee is not a next of kin, by virtue alone of such assignment, and no right to letters is given an assignee under that statute.

The petitioner contends that if she is not entitled to letters under the petition as filed, she or her nominee should be appointed upon filing her consent to such appointment, as she is the only person now entitled to take or share in the estate because of such assignment by the sole distributee, and moves for permission to file such consent and other necessary papers, and to amend her petition accordingly.

*Matter of Murphy* (87 Misc. 564), cited by the petitioner, is not in point for the sole next of kin in that estate was himself competent to receive letters and it was his consent that had not been filed. I have, however, considered this application on the assumption that all necessary papers, including a consent, have been filed, for if the failure to file any paper or papers is the only bar to

granting the application in all respects, I would permit such paper or papers to be filed and grant the petitioner's motion for leave to file the same and to amend her petition accordingly. (*Matter of Murphy, supra.*)

The petitioner urges as the basis of such contention that the public administrator may be appointed herein only " if   *   *   * an appointment is not made by consent as " provided in section 118 of the Surrogate's Court Act, and that the petitioner may give such consent under the subsequent provisions of that section, reading, " administration may be granted   *   *   * to a competent person or persons not entitled, upon the consent of all of the persons entitled to take or share in the estate whether within or without this state and competent."

It is true that the surrogate may issue letters to the person designated in such a consent, and the statute so limits the public administrator's right to administration. It has been held that the word " competent," as used in the above-quoted portion of the section to qualify the persons who may so consent, means " competent to receive letters " and is there used in the same sense as in section 94 of the Surrogate's Court Act. (*Matter of MacMillan, supra; Matter of Brancati, supra; Matter of Mora, supra.*)

That the petitioner is a person competent to receive letters and to give such consent under the provisions of sections 94 and 95 of the Surrogate's Court Act, if she is otherwise entitled to do so, is not disputed.

Whether or not she has a right, under the provisions of section 118, to administer the estate or to consent that administration be granted " to a competent person or persons not entitled " depends upon the interpretation of the expressions: " the persons entitled to take or share in the personal property," to whom that section directs administration must be granted; and " all the persons entitled to take or share in the estate," as used in that section to describe those whose consent to the appointment of a stranger is required. If the right to administer and to give such consent is thereby confined to those entitled to take or share as a surviving spouse and as next of kin, she cannot be appointed unless the public administrator moves for and obtains an order excusing him from acting, and no such consent can be filed in this proceeding for there is no surviving wife and no next of kin competent to receive letters. If, however, such expressions embrace those entitled to take or share in the estate as assignees of a surviving spouse or next of kin, the petitioner may consent to the appointment of a competent stranger, or receive letters herself.

Section 118 of the Surrogate's Court Act reads as follows:

" § 118. Who entitled to letters of administration. Administration in case of intestacy must be granted to the persons entitled to take or share in the personal property, who are competent and will accept the same, in the following order:

" 1. To the surviving husband or wife.

" 2. To the children.

" 3. To the grandchildren.

" 4. To the father or mother.

" 5. To the brothers or sisters.

" 6. To any other next of kin entitled to share in the distribution of the estate, preference being given to the person entitled to take the largest share in the estate, except as hereinafter provided.

" If a person entitled to take all the personal estate is an infant, or an incompetent, or has died, his guardian, committee or legal representative, as the case may be, shall have a prior right to letters in his place and stead.

" If all the persons entitled to take the personal estate are infants, or adjudged incompetents, or, if no adult or competent person entitled to take or share in the estate will accept the same, letters may be granted to the general guardian of an infant or to the committee of an incompetent, in the place of such infant or incompetent.

" If no person entitled to take or share in the estate will accept the same or an appointment is not made by consent as hereinafter provided, then administration shall be granted as follows:

" a. To the public administrator.

" b. To the county treasurer of the county, or to the petitioner, in the discretion of the surrogate.

" c. To any other person or persons.

" If several persons have an equal right to administration, there shall be no preference on account of sex, but that person must be appointed, who will, in the judgment of the surrogate, best manage the estate of the intestate. Relatives of the whole blood must be preferred to those of the half blood. If there are several persons equally entitled to administration, the surrogate may grant letters to one or more of such persons. Administration may be granted to one or more competent persons, jointly with a person entitled upon the application of a person entitled to take or share in the personal property, or to a competent person or persons not entitled, upon the consent of all the persons entitled to take or share in the estate whether within or without this state and competent, which consent must be in writing, and filed in the office of the surrogate. For the purposes of this section a trust company or other corporation authorized to act as administrator shall be included in the word ' person.' "

The development of that statute is illuminative, but only so much thereof is noted below as is now pertinent, together with other material legislation.

In 1801 Chief Justice KENT and Justice RADCLIFFE, under authority of the Legislature, revised the laws of New York, and their revision was published in 1802 in two volumes containing all the laws of this State then in force. Their work is known as the Kent and Radcliffe Revision and has been cited as K. & R. In 1813 the laws were again revised, passed and published in two volumes, pursuant to an act passed April 13, 1813. This compilation of the statutes is known as the Revised Laws and is cited as R. L.

An act passed April 8, 1813, was therein incorporated as chapter 79 of the Revised Laws. It directed that intestate administration " shall be granted to the widow or next of kin of the intestate, or some of them " and then, unless ·" such intestate died within the city and county of New York, to any other proper person or persons." (1 R. L. 445, chap. 79, § 5; from 1 K. & R. 318, § 5.) It also directed that when the intestate died within the city and county of New York, or being a non-resident of the State died anywhere leaving assets within said city and county, " administration shall be granted to the chamberlain of the said city, and his successors in office," unless " the widow or next of kin, residing within this state " shall apply for administration within one week after the intestate's death. (1 R. L. 449, chap. 79, § 17; from 1 K. & R. 321, § 14.) The chamberlain's letters were revocable, however, upon application of the widow, child, father, brother or sister, if made within three months after such administration had been granted. (1 R. L. 449, chap. 79, § 18; from 1 K. & R. 322, § 15.) Provision was also made for administration by a surviving husband (1 R. L. 314, chap. 75, § 17; from 1 K. & R. 539, § 16), but no authority was given to grant administration in the city and county of New York to any person other than the widow, husband, a next of kin or the city chamberlain.

The appointment of a " public administrator in the city of New York " was authorized in 1815. He was given the same right to administration and priority therein, formerly enjoyed by the city chamberlain, except that provision was made for service of citation upon the widow and next of kin. (Laws of 1815, chap. 157, §§ 1 and 2.) The statutes thereafter enacted with reference to the grant of intestate administration in the city and county of New York have continued to give such public administrator the same priority except as hereinafter noted.

Pursuant to acts passed April 21, 1825, December 4, 1827, and

December 10, 1828, another official revision was published in three volumes in 1829, wherein the laws were first assembled in some logical order of sequence, and the chapters and sections of the Revised Laws were renumbered. This statutory publication is known as the Revised Statutes. It was therein directed that: " Administration, in case of intestacy, shall be granted to the relatives of the deceased, who would be entitled to succeed to his personal estate, * * * in the following order: * * * seventh, to any other of the next of kin who would be entitled to share in the distribution of the estate." Guardians of infants were entitled to act in place of their wards. Next in order came creditors with preference to the first applicant in that class, and then any other person or persons legally competent; " but in the city of New York, the public administrator shall have preference after the next of kin, over creditors and all other persons." Husbands, however, retained their priority over all other persons. (2 R. S. 74, part 2, chap. 6, tit. 2, art. 2, § 27.)

In 1876 certain provisions of the Revised Statutes relating to courts, officers of justice and civil proceedings were revised and continued in a separate compilation styled " The Code of Civil Procedure " (Laws of 1876, chap. 449). It did not include, however, those relating to Surrogates' Courts and proceedings therein. Some of these provisions were taken from the Revised Statutes, revised and added to the Code of Civil Procedure in 1880 as chapter 18 thereof, consisting of sections numbered 2472 to 2860 thereof, but section 27 of article 2 of title 2 of chapter 6 of part 2 of the Revised Statutes was not transferred, and remained in the Revised Statutes (Laws of 1880, chap. 178). That act also added section 2514 to the Code. Subdivision 12 of this section contained the following definition: " The term, ' next of kin,' includes all those entitled, under the provisions of law relating to the distribution of personal property, to share in the unbequeathed residue of the assets of a decedent after payment of debts and expenses, other than a surviving husband or wife."

In 1893 section 27 of article 2 of .title 2 of chapter 6 of part 2 of the Revised Statutes was amended and transferred to the Code of Civil Procedure as an amendment of section 2660 thereof, which section, however, had not previously contained any reference to such appointment. Under this amendment, " administration in case of intestacy must be granted to the relatives of the deceased entitled to succeed to his personal property, who will accept the same, in the following order: 1. To the surviving husband or wife. * * * 8. To any other next of kin entitled to share in the distribution of the estate." A new sentence was inserted to

permit the appointment of strangers jointly with a person entitled to letters. (Laws of 1893, chap. 686.) In 1894 priority was given " to an executor or administrator of a sole legatee " after next of kin and over the public administrator in the city of New York (Laws of 1894, chap. 503).

The Code provisions relating to Surrogates' Courts and proceedings therein were amended and revised by chapter 443 of the Laws of 1914, and section 2660 became section 2588. The new section directed that intestate administration " must be granted to the persons entitled to take or share in the personal property, who are competent and will accept the same, in the following order :"

A new sentence was inserted whereby priority over all other persons was given to the guardian, committee or legal representative of an infant, incompetent or deceased sole distributee, in the place of such infant, incompetent or deceased sole distributee. Priorities after next of kin were amended so that in the event no person entitled to take or share in the estate would accept letters and no appointment of a stranger was made " upon the consent of all the persons entitled to take or share in the estate who are within this state and competent," administration was directed to be granted as follows: " a. To the public administrator.  b. To the county treasurer of the county, or to the petitioner, in the discretion of the surrogate.  c. To any other person or persons." A trust company or other authorized corporation was declared to be included in the word " person " for the purposes of the revised section.

The substitution of " persons entitled to take or share " for the former " relatives entitled to succeed," to denote those to whom administration should be granted, settled a question frequently in our courts. The last determination thereof in the Court of Appeals was made in *Matter of D'Adamo* (212 N. Y. 214), after the revision of 1914 was enacted but prior to the date it became effective. The opinion directed the reversal of an order of the Appellate Division in the Fourth Department (159 App. Div. 40) which had affirmed an order of the Jefferson County Surrogate's Court, and contained the following reference to the amendments of section 2660 and its revision into section 2558: " and radical changes have been made in it. The result of these amendments will be to establish a new rule hereafter." The right of the public administrator in the city of New York to priority after next of kin and the executor or administrator of a sole legatee, and over creditors and all other persons was not affected by that decision as it dealt with the administration of an estate in a county outside the city of New York.

Under that revision the definition of "next of kin" in subdivision 12 of section 2514 (Laws of 1880, chap. 178) was continued without change as subdivision 12 of section 2768.

Chapter 928 of the Laws of 1920 removed chapter 18 from the Code of Civil Procedure and placed the sections thereof in a separate codification known as the Surrogate's Court Act, and section 2588 was thereby continued as section 118 of such act, without change, except to omit an irrelevant amendment of 1920. This omission was supplied by section 4 of chapter 201 of the Laws of 1921.

In 1923 section 118 was amended so that all distributees, "whether within or without this state and competent," instead of those "who are within this state and competent," must consent to the appointment of strangers not joined with a distributee (Laws of 1923, chap. 214).

Except for such amendment and an irrelevant amendment in 1925 (Laws of 1925, chap. 574), section 118 is now identical with section 2588 as enacted in 1914. Subdivision 12 of section 314 of the Surrogate's Court Act continued to define "next of kin" in the exact language of the 1880 addition to the Code until the definition of that term was transferred to section 81 of the Decedent Estate Law in 1929, and a definition of "distributees" was substituted therefor in that subdivision.

When the section of the Revised Statutes affecting the right of intestate administration was added to the Code of Civil Procedure in 1893, and when section 2660 was revised and continued as section 2558 in 1914, there was a distinct difference between the distribution of personalty and the descent of realty, which continued until the general amendment of 1929, above mentioned. The surviving spouse shared in the personalty, the widow had her dower and the widower often took an estate by curtesy, yet neither was a next of kin or heir at law of the deceased spouse. Frequently personalty was distributed, and realty of the same intestate descended, to different persons and in different proportions.

In the revision of 1914 the Legislature intended to and did continue to give the first right of administration to a surviving spouse, if competent to receive letters. Although a "relative by affinity," a surviving husband or wife could not properly be designated a "next of kin" as that expression was then defined by statute. The only reasonable explanation of the use of the expression "Persons entitled to take or share," recurring throughout section 2588 of the Code of Civil Procedure (now section 118 of the Surrogate's Court Act) is that the Legislature intended to mean thereby "a surviving spouse, if any, and the decedent's next of

kin, except those who had alienated their interest in the estate." That such was the legislative intention is further evidenced by the language of the statute, immediately following the designation of the surviving spouse and certain specified relatives as the persons entitled to administration in the order named, to wit: " 6. To any *other next of kin* entitled to share in the distribution of the estate." (Italics mine.) The word " other " must refer the words " next of kin " back to the " persons " thereinbefore enumerated, except the surviving husband or wife. If the words " other next of kin " were not intended to apply to and characterize the " persons " previously enumerated, except a surviving spouse, there is no reason for the employment of the word " other." Such " persons " are " next of kin " in the order specified when those previously named do not survive the intestate, and the order of priority prescribed in that section, in so far as it specifies kinship, does so in the exact order in which they are entitled to take or share under the Statute of Distribution. (*Matter of Fiumara*, 127 Misc. 794.) This similarity, coupled with the rule of statutory construction that general phrases in a statute must yield to particular specifications contained in the same statute (*Matter of Holzworth*, 166 App. Div. 150, 154; affd., 215 N. Y. 700), upholds the construction that the phrase " persons entitled to take or share in the estate " restricts the class who may consent to the appointment of a stranger as sole administrator to the distributees previously enumerated. (*Matter of Albrecht*, 119 Misc. 554.)

The New York City Consolidation Act of 1882 continued the office of public administrator in the city of New York (Laws of 1882, chap. 410, § 216). Upon the adoption of the charter of the city of New York in 1897, the designation of that office was changed to the public administrator of the county of New York (Laws of 1897, chap. 378, § 1585). The provisions of the Consolidation Act of 1882, and acts amendatory thereof, in relation to the public administrator in the city of New York and the public administrator of the county of New York, as well as all other acts relating to or affecting said public administrator then in force, were continued by chapter 230 of the Laws of 1898, except as thereby modified or inconsistent therewith.

The office of public administrator of the county of Bronx was authorized in 1912, with all the authority and powers in Bronx county which the public administrator of New York county had when such authorization became effective (Laws of 1912, chap. 548, § 3), and all acts and parts of acts specially applicable to the county of New York, and not inconsistent with the act erecting

the county of Bronx, were continued in full force and effect in the county of Bronx (Laws of 1912, chap. 548, § 11).

The above *résumé* also discloses no indication whatever of any legislative intent to limit the preference in the right to intestate administration, held since 1815, first by the chamberlain of the city of New York, then by the public administrator in the city of New York, later by the public administrator of the county of New York and now by the public administrator of the county of Bronx, except as expressly declared in the above-noted amendments to and revisions of the statute relating to intestate administration. In the revision of 1914 the same priority, as modified by such amendments, was continued and extended to all public administrators, and the statute has not since been modified in that respect. (Surr. Ct. Act, § 118.)

Under the present definition of " distributees " (Surr. Ct. Act, § 314, subd. 12) so much of section 118 as is now relevant should, therefore, be construed as if it read: " Administration in case of intestacy must be granted to the distributees entitled to take or share in the personal property, who are competent to receive letters and will accept the same in the following order: * * * If none of the foregoing persons entitled to take or share in the estate will accept the same (*Matter of Albrecht, supra*), or an appointment is not made by consent * * * of all the distributees entitled to take or share in the estate whether within or without this state and competent, * * * then administration shall be granted * * * to the public administrator."

The words " entitled to take or share " do not include creditors, assignees and other persons who are not distributees. (*Matter of Morel, supra; Matter of Jordan, supra; Matter of Fuchs*, 126 Misc. 90; *Matter of Fiumara, supra*.) The use of some such words of limitation or qualification is necessary to effectuate the general intention of the 1914 revision of this statute, which was to give only persons interested the right to administer. (Revisers' note, transmitted to the Legislature February 9, 1914; *Matter of Bunimowitz*, 128 Misc. 518; *Matter of Fiumara, supra*.) Otherwise a distributee who had divested himself of all his interest in the estate by release, assignment, ante-nuptial agreement or otherwise, might demand letters. (*Matter of Bunimowitz, supra*.) While this phrase excludes from administration those distributees who have not retained their interest in the estate, it does not include their assignees or successors among those entitled to letters.

It happens that the petitioner is a near relative. If her contention that she is entitled either to letters herself or to nominate an administrator, because as such assignee she is now the sole

person entitled to take the entire net estate, be sustained, it would follow that any competent assignee, unrelated by blood or affinity to an intestate, could demand letters in priority to a public administrator. Such a construction would, in effect, permit an incompetent distributee, under cover of an assignment, to empower another to do for him what he is precluded from doing under our statutes, and if all distributees were incompetent to receive letters, the assignee of a small fraction of the distributive share of a non-resident alien could demand letters, although there were resident insane and infant distributees without committees or guardians. Such a result would be in conflict with the legislative intention as expressed in the statute and as construed by the courts.

The Surrogate's Court has no discretion to modify or ignore the order of priority in the appointment of an administrator as prescribed in section 118, except as therein expressly permitted, unless the person having the prior right is incompetent to receive letters by reason of one or more of the grounds specified in sections 94 and 95 of the Surrogate's Court Act. (*Matter of Campbell*, 123 App. Div. 212, 216; affd., 192 N. Y. 312, 316; *Matter of Albrecht*, *supra*.) Neither can such order of preference be extended to an agent or attorney in fact or other representative except to join a competent person with a competent distributee or to appoint a competent person upon the consent of all the distributees, provided the latter are all competent to serve themselves. (*Matter of Fuchs*, *supra*, and cases cited.)

The petitioner is not entitled to administration and cannot nominate an administrator. The filing of additional papers will not improve her situation and her motion to file same and to amend her petition is accordingly denied.

As the sole distributee, although of full age and sound mind, is not competent either to receive letters or to consent to the appointment of another, no distributee can be appointed and no appointment can be made upon consent. The public administrator, therefore, has a right to administration herein, prior to all other persons and must be appointed.

The application is granted to the extent of appointing an administrator, but letters will issue to the public administrator of the county of Bronx upon his qualifying as provided by statute. Such letters, however, will be restricted and limited, pursuant to the provisions of section 122 of the Surrogate's Court Act, as to the cause of action alleged in the petition.

Settle decree accordingly.